# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DAVID GANN, also known as JENNIFER GANN,<br><br>           Plaintiff,<br>v.<br><br>GEORGE A. NEOTTI, Warden; G. PEDERSON, Correctional Lieutenant; B. MORRIS, Correctional Captain; M. VIRGEN, Correctional Officer; John Does 1-20; MATTHEW CATE, Director of Corrections; ROBERT J. HERNANDEZ, Warden; K. SPENCE, Correctional Lieutenant; E. GARCIA, Correctional Sergeant; E. MARRERO, Correctional Captain; W. BEAUCHEMIN, Correctional Lieutenant; W. LILES, Correctional Sergeant,<br><br>           Defendants. | Civil No. 09cv1703 MMA (NLS)<br><br>REPORT AND RECOMMENDATION TO DENY MOTION FOR LEAVE TO SUPPLEMENT COMPLAINT<br><br>[Docket No. 21.] |

## I. INTRODUCTION

John David Gann, aka Jennifer Gann ("Plaintiff"), a prisoner currently incarcerated at the Richard J. Donovan Correctional Facility ("RJDCF") located in San Diego, California, and proceeding *pro se*, initiated this civil rights action pursuant to the Civil Rights Act, 42 U.S.C. § 1983 on August 5, 2009. Plaintiff is biologically male, but identifies as a transgender female, and is on a regimen of hormone therapy. (Second Amended Complaint ("SAC" at ¶ 16.)[1] Plaintiff "underwent a significant

---

[1] The SAC refers to Plaintiff as "she" and, for consistency, the Court will also refer to Plaintiff as "she."

percentage of physical change from male to female, including breast growth development and secondary female characteristics." (*Id.* at ¶ 42.)  The SAC alleges Defendants have violated Plaintiff's civil rights by: discriminating and harassing her based on her transgender status; inflicting cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution, including deprivation of outdoor exercise and indifference to medical need; and denying her equal protection under the law by failing to treat Plaintiff equally to biological women.

On August 11, 2009, the Court dismissed the case because Plaintiff failed to either prepay the $350 filing fee mandated by 28 U.S.C. § 1914(a) or file a Motion to Proceed *In Forma Pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a) [Doc. No. 2].  On August 17, 2009, Plaintiff filed a Motion to Proceed IFP, and on August 25, 2009, before the Court ruled on her IFP Motion or could conduct a *sua sponte* screening of her original Complaint, Plaintiff filed a First Amended Complaint, as was her right pursuant to Rule 15 of the Federal Rules of Civil Procedure.  Fed.R.Civ .P. 15(a)(1). [Doc. No. 4].  On September 2, 2009, the Court granted Plaintiff leave to proceed IFP and, finding her First Amended Complaint survived the mandatory screening required by 28 U.S.C. §§ 1915(e)(2) and 1915A, directed the United States Marshal to effect service of the First Amended Complaint upon her behalf.   [Doc. No. 5].  On October 2, 2009, Plaintiff filed a Motion to Amend/Correct the First Amended Complaint. [Doc. No. 8.]  On December 22, 2009, the Court granted Plaintiff leave to file a Second Amended Complaint ("SAC") to identify three Defendants previously identified only as John Does and denied Plaintiff leave to add her cell-mate Freddy Luna as a co-Plaintiff.[2]  [Doc. No. 9.]

On November 25, 2009, certain Defendants filed a Motion to Dismiss, which is currently pending before the court. [Doc. No. 19.]  On December 2, 2009, Plaintiff filed the Motion to Supplement the Complaint currently before the Court. [Doc. No. 21.]  Plaintiff seeks leave to file a "Supplemental Complaint" (hereinafter "PSC") to include incidents occurring in September and October of 2009 and involving nine additional Defendants.[3]  On December 22, 2009, Defendants timely filed an Opposition to the Motion to Supplement. [Doc. No. 26.]  Having considered all of the papers, and good

---

[2] Although the the SAC refers to "Plaintiff Freddy Luna," Mr. Luna is not a party to this action.

[3] The PSC does not allege that any of the Defendants Plaintiff seeks to add are actually the true identities of Doe Defendants names in the SAC.

cause not appearing, the Court Recommends that the Motion to Supplement be Denied.

## II.     FACTUAL ALLEGATIONS OF THE SAC

### A.     The Defendants

Defendant Matthew Cate is the Secretary of the California Department of Corrections and Rehabilitation. ("CDCR.")(*Id.* at ¶ 4.) Defendant George Neotti is the Acting Warden at RJDCF. (*Id.* at ¶ 5.) Defendant Robert Hernandez is the retired Warden of RJDCF. (*Id.* at 6.) Defendant B. Morris is a Correctional Caption of the Administrative Segregation Unit ("ASU") at RJDCF. (*Id.* at ¶ 7.) Defendant Marrero is a Correctional Caption who reviews placements in the ASU. (*Id.* at ¶ 8.) Defendant W. Beauchemin is Correctional Lieutenant who approves placements in the ASU. (*Id.* at ¶ 9.) Defendant Liles is a Correctional Sergeant at RJDCF. (*Id.* at ¶ 10.) Defendant Pederson is a Correctional Lieutenant and Appeals Coordinator at RJDCF. (*Id.* at ¶ 11.) Defendant Spence is a Correctional Lieutenant of the ASU at RJDCF. (*Id.* at ¶ 12.) Defendant Garcia is a Correctional Sergeant at RJDCF. (*Id.* at ¶ 13.) Defendant Virgen is a Correctional Officer at RJDCF. (*Id.* at ¶ 14.)

### B.     Allegations of Defendants Ignoring Risk of Harm to Plaintiff

Plaintiff Gann arrived at RJDCF on October 23, 2008. (*Id.* at ¶ 17.) Plaintiff informed Defendant Liles that she was transgender and random housing assignments with male prisoners jeopardized her safety. (*Id.*) Plaintiff explained to Defendants Liles and Beauchemin that she is vulnerable to sexual harassment, she objected to random housing assignment, and requested "compatible same-gender housing accomodations [sic]." (*Id.* at ¶ 18.). Defendant Beauchemin placed Plaintiff in ASU for refusing to be double celled and Defendant Liles issued Plaintiff a CDC-115 Rules Violation Report for refusing to accept assigned housing. (*Id.* at ¶ 19.)

On October 24, 2008, Plaintiff was given a random housing assignment with a "known sexually violent predator." (*Id.* at ¶ 20.) Plaintiff informed Defendant Marrero of her safety concerns, but Defendant Marrero "ignored Plaintiff Gann's safety" (*Id.*) Defendant Pederson again placed Plaintiff in disciplinary segregation. (*Id.* at ¶ 21.)

Plaintiff asserts that Defendants Liles, Beauchemin, Pederson and Marrero all "acted with deliberate indifference and reckless disregard of the substantial risk of serious harm to Plaintiff" and instead of protecting Plaintiff, they subjecting her "to retaliation and extremely harsh conditions of

disciplinary segregation in the ASU." (*Id.* at ¶ 22.)

### C. Allegations of Procedural Violations (Due Process Claims)

Plaintiff claims she was never provided initial copies of the CDC 114-D ASU Placement Notice and she did not receive the final copy of the RVR after the October 23, 2008 hearing until August of 2009, thereby depriving her of the right to appeal. (*Id.* at ¶ 23.) The SAC also asserts Defendant Pederson was not a fair decision maker at the hearing because he authorized the ASU placement and made discriminatory statements, including: "This is a male prison facility. You will act and be treated like a male inmate." (*Id.* at ¶ 24.) The SAC further asserts Defendant Pederson falsified the hearing record, incorrectly recording that Plaintiff entered a Guilty Plea. (*Id.* at ¶ 25.) Finally, the SAC also asserts the "disciplinary procedural violations and illegal placement in the ASU" violated Plaintiff's rights to due process of law under the Fourteenth Amendment. (*Id.* at ¶ 51.)

### D. Allegations of Harassment

Plaintiff claims that she "has been and continues to be ordered strip-searched in front of leering male guards and inmates, sexually harassed and taunted with degrading and derogatory remarks." (*Id.* at ¶ 26.) Plaintiff also asserts Defendant Virgen stated "F*ck you faggot! Suck your cellie's dick!" (*Id.* at ¶ 28.)

### E. Allegations of Violations of the Eighth Amendment

Plaintiff alleges she has been treated "much different than the way most ASU inmates are treated in California prisons" and has been subjected to a year in disciplinary segregation "under unusually harsh and severe punitive conditions, which imposes an atypical and significant hardship on plaintiffs in relation to the ordinary incidents of prison life." (*Id.* at ¶ 37.)

#### 1. Lack of Outside Exercise

The SAC alleges Plaintiff was confined to her cell, from October 23, 2008 through February 18, 2009 with no outdoor exercise, an atypical ASU condition. Plaintiff claims Defendants Morris and Spence were aware of the lack of outdoor exercise and failed to intervene. (*Id.* at ¶ 27.)

#### 2. Deprived of Evening Meal

Plaintiff alleges, on July 8, 2009, Defendant Virgen deprived Plaintiff of the evening meal and threatened reprisals for filing CDC 602 inmate appeals. (*Id.* at ¶ 30.)

### 3. Assault

The SAC alleges, on or about June 18, 2009, Plaintiff was "physically assaulted by c/o Virgen, who threw a food tray with force at Gann and her cellmate" through the open food port "striking plaintiffs in the frontal area." Defendant Virgen "with malice aforethought then slammed the food port shut, injuring Gann." (*Id.* at ¶28.) Plaintiff also asserts she informed Defendant Garcia about Virgen's assault and failure to provide an evening meal, but Garcia failed to intervene. (*Id.* at ¶ 31.)

### F. Allegations of Supervisory Liability

The SAC alleges Defendants Cate, Hernandez, Neotti, Morris and Spence "knew or should have known illegal and inhumane conditions which existed and persist in the ASU at RJDCF, including: physical brutality by guards; sex discrimination and harassment of transgender female inmates; unsanitary, dangerous, or overly restrictive conditions, such as no televisions, combs for grooming, or deprivation of basic human needs described herein above; overcrowding and inadequate medical care." (*Id.* at ¶ 32.)

### G. Allegations of Indifference to Medical Need

The SAC alleges Plaintiff Gann has been diagnosed with Gender Identity Disorder ("GID") and Post-Traumatic Stress Disorder, but Defendants have acted with deliberate indifference by imposing a blanket -ban policy against sex-reassignment surgery (SRS) and failing to follow the Standards of Care for GID 6th Version." (*Id.* at ¶¶ 34-35.)

### H. Discrimination

The SAC alleges Defendants discriminated against Plaintiff based on her sex, gender identity, sexual orientation and/or mental disability. (*Id.* at ¶ 38.) Plaintiff also asserts she has been denied access to gender based amenities, facilities and programs, based on her status as a transgender person who does not conform to sex stereotyped gender norms. (*Id.* at ¶ 39.) The SAC alleges the sex discrimination violated Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a)(1) and the discrimination based on mental disability violated the Americans with Disabilities Act, 42 U.S.C. §12101. (*Id.* at ¶ ¶ 52-53.)

### I. Allegations of Denial of Equal Protection

The SAC also asserts Plaintiff Gann is similarly situated to biological female inmates but is not

given equal protection or equal treatment to biological women because of her sex. (*Id.* at ¶ 40.) The SAC alleges Defendants "have continued to deprive Plaintiff of female clothing and amenities, compatible female housing, and access to women's facilities and programs, based solely on her sex, or sex-stereotyping." (*Id.* at ¶ 43.)

**III.   ALLEGATIONS IN THE PSC**

   **A.   New Defendants**

Plaintiff seeks to add the following new Defendants:  D. Morris, the Chief Deputy Warden; P. Cowan, Associate Warden; A. Cota, Associate Warden; B. Koen, Correctional Captain responsible for Facility 2 and the functional operation of the ASU; A. Miranda, Correctional Sergeant in charge of the second watch at ASU #6; M Chacon, Correctional Officer; A. Buenrostro, Correctional Officer; J. McGee, Correctional Officer; and A Llamas, Correctional Officer. (Proposed Supplemental Complaint "("PSC") ¶¶ 4-12.)[4]

   **B.   New Allegations**

      1.   <u>Allegations of Harassment of Plaintiff</u>

On October 1, 2009, Plaintiff was interviewed by Special Agent Steve Dye of the Office of Internal Affairs ("OIA") about the death of an inmate and the dismissal of a Licensed Vocational Nurse and Licensed Psychiatric Technician. (PSC ¶ 16.) The PSC asserts Defendants McGee, Chacon, and Buenrostro threatened Plaintiff in an attempt to prevent her from cooperating with the OIA investigation. (*Id.* at ¶ 17.)

On October 4, 2009, Plaintiff was ordered by Defendant McGee to "strip, squat and cough." When Plaintiff informed McGee that such a public strip search would be sexual harassment for a transgender inmate, McGee responded "And I'm going to put my finger in your rectum." Plaintiff was not searched in public. A private search was conducted "in a professional manner" by Correctional Officer Juares. (*Id.* at ¶¶ 22-23.) On October 6, 2009, proposed Defendants McGee and Miranda authored a CDC 128B General Chrono, putting Plaintiff on Yard Hold Status even though Plaintiff

---

[4]The PSC at times discusses Mr. Luna as if he were a Plaintiff and, at times, refers to "Plaintiffs" in the plural. In the interests of clarity, the Court will interpret "Plaintiffs" to refer to Plaintiff in the singular. Where it is clear from the text that only Mr. Luna is involved in the allegation, the Court will refer to him as "Luna."

complied with the indoor search by Correctional Officer Juares. The PSC asserts the strip search is part of the "campaign of harassment and retaliation and witness intimidation" (*Id.* at ¶ 26.) On October 6, 2009, proposed Defendant McGee handed Plaintiff copies of the CDC128B and said "Checkmate" because he and proposed Defendant Miranda "further deprived plaintiff of outdoor exercise/yard access." (*Id.* at ¶ 28.)

On October 5, 2009, proposed Defendant McGee attempted an unauthorized entry of Plaintiff's cell as part of the "campaign of harassment." The control booth operator, Correctional Officer Brown refused to open the cell door. (*Id.* at ¶ 24.)

On October 4, 2009, proposed Defendant Llamas conducted a punitive cell search, confiscated laundry, refused to provide a receipt, and made "disrespectful, unduly familiar and sexually inappropriate comments toward Plaintiffs, he stated 'Luna, don't do Gann too hard.'" (*Id.* at ¶ 25.)

### 2. Alleged Interference with Exhaustion

The PSC alleges Defendants Neotti, Pederson and proposed Defendant Miranda "demonstrated a pattern of obstructing all Citizens' Complaints and CDC 602 Inmate Appeals" filed by Plaintiff in this case. Plaintiff claims she submitted 602s on June 18, July 1 and 21, August 20, and October 4 and 12 of 2009 but Defendants screened them all out "based on bogus criteria." (*Id.* at ¶ 29.)

### 3. Allegations of Disability Discrimination

Plaintiff claims on August 24, 2009 she submitted a CDC 1824 Reasonable Modification of Accommodation Request for Mental Disability, Log No. RJD-09-01181, which was denied September 24, 2009 and denied at the Second Level by Morris. Plaintiff concedes that the appeal to the Director's level Review is pending. (*Id.* at ¶ 30.)

### 4. Allegations Not Based on Plaintiff's Conduct

On October 2, 2009, proposed Defendants Buenrostro, Chacon and McGee "continued a campaign of harassment and threats of retaliation" against Plaintiff for a compliant filed by her cellmate, Freddy Luna, including kicking in the cell door, "punitive" cell searches leading to confiscation of allowable personal property. (PSC ¶¶ 18-19.)

On October 3, 2009 another inmate died in his cell while proposed Defendants Buenrostro and McGee failed to summon emergency medical care. (*Id.* at ¶ 20.)

On October 1, 2009, Luna was served with a falsified CDC 114D ASU Placement Notice. (*Id.* at ¶ 21.) On October 7, 2009, Luna appeared before the Institutional Classification Committee ("ICC") on the falsified charge of refusing to accept a cellmate even though Luna and Plaintiff are cellmates. Plaintiff alleges the ICC chairman Cota, the Associate Warden, denied Luna's request for witnesses and dismissed the claims of threats and retaliation by Correctional Officers. The PSC alleges Cota said "submit an appeal." Plaintiff claims Luna submitted an appeal directly to Cota. (*Id.* at ¶ 27.)

## IV.  DISCUSSION

### A.  Legal Standards

Leave to amend should be freely given "when justice so requires." Fed.R.Civ.P. 15(a)(2); *see also DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (internal quotation marks and citation omitted). "Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). Although these multiple factors are usually considered, "futility of amendment alone can justify the denial of a motion." *Ahlmeyer v. Nevada System of Higher Education*, 555 F.3d 1051, 1055 (9th Cir. 2009) (*citing Johnson*, 356 F.3d at 1077).

Although Rule 15 requires leave to be given freely, in the context of a prisoner's civil rights suit, "proposed amendments to the complaint must also be viewed in light of the restrictions imposed by 28 U.S.C. § 1915 as amended by the Prison Litigation Reform Act (PLRA)in 1996." *Sua v. Espinda*, 2010 WL 184314 at *1 (D. Haw. Jan. 19, 2010) (not allowing amended complaint where new allegations occurred after the original complaint was filed.) Thus, where the proposed amendment would be futile in light of the restrictions of the PLRA, leave to amend should not be granted.

### B.  The Events in the PSC Are Barred by Failure to Exhaust

As amended by the Prison Litigation Reform Act ("PLRA"), Title 42, United States Code, section 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.

§ 1997e(a) (West 2001).[5]  The Supreme Court has held that the exhaustion requirement in section 1997e(a) is mandatory regardless of the type of claim and the remedy being sought.  *Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  Because exhaustion is an affirmative defense, the defendant bears the burden of establishing that the plaintiff failed to exhaust all available administrative remedies.  *Wyatt v. Terhune*, 315 F.3d 1108, 1117-1119 (9th Cir. 2003).

In addition, section 1997e(a) precludes exhaustion during the pendency of a federal action. *McKinney v. Carey*, 311 F.3d 1198 (9th Cir. 2002).  In *McKinney*, the Ninth Circuit agreed with the findings of seven other circuit courts that section 1997e(a) "requires exhaustion before the filing of a complaint and that a prisoner does not comply with this requirement by exhausting available remedies during the course of the litigation."  *Id.* at 1199.  In sum, this Court does not have discretion to decide a claim on the merits if the prisoner plaintiff did not exhaust all available administrative remedies in the prison system prior to filing suit even if the prisoner exhausts his administrative remedies while his federal action is pending.

"Failure to exhaust nonjudicial remedies is a matter in abatement" not going to the merits of the case and is properly raised pursuant to a motion to dismiss, including a nonenumerated motion under Federal Rule of Civil Procedure 12(b).  *Ritza v. International Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 369 (9th Cir. 1988); *see also Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003).  A decision on a nonenumerated motion to dismiss may be based on facts outside the record.  *Id.* "If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice."  *Id.* at 1120.

In this case, the original complaint was filed on August 5, 2009.  Almost all of the allegations Plaintiff seeks to add did not take place until October of 2009.  Accordingly, at best, these allegations could only have been exhausted while this action was pending.  If leave to file the PSC were granted, Defendants would have the opportunity to move to dismiss the PSC based on failure to exhaust. As Plaintiff's claims in the PSC cannot have been exhausted prior to the filing of the original complaint, it would be futile to allow Plaintiff to add these allegations.  Accordingly, the Court recommends that

---

[5]The administrative appeal system for inmates in the California prison system is described in Title 15 of the California Code of Regulations section 3084.1 *et seq.*

leave to supplement be denied.

### C. The Events Not Barred By Failure to Exhaust Fail to State A Claim

The only actions alleged to have taken place prior to the filing of the original complaint are Plaintiff's submission of inmate appeals (602's) and citizen's complaints on June 18, 2009 and July 1, 2009. (PSC ¶ 29.) Plaintiff claims Defendants' Neotti, Pederson and Miranda have "demonstrated a pattern of obstructing all Citizens' Complaints and CDC 602 Inmate Appeals" she has filed and that her complaints and appeals "continue to be screened out based on bogus criteria. No formal or informal level response has been provided nor the appeals logged or processed by the Defendants." (*Id.*)

Plaintiff's allegations of violation of due process for improper processing of prisoner grievances fail to state a claim because the due process clause of the Fourteenth Amendment creates no claim of entitlement to the prison grievance system. *Mann v. Adams*, 855 F.2d 639 (9th Cir. 1988); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Torres v. Mendoza-Powers*, 2008 WL 2225685 (S.D.Cal. May 28, 2008). Moreover, the PSC contains no information as to: 1) how any defendant is obstructing the complaints and appeals; or 2) the substance of any of the complaints or appeals. Accordingly, the PSC fails to allege any way in which the allegedly improper review of her grievances amounted to a restraint on her freedom not contemplated by her original sentence. *See Gray v. Woodford*, 2007 WL 2790588 (S.D. Cal. Sep. 25, 2007). Accordingly, allowing Plaintiff to amend her complaint to add the bare allegation that Neotti and Miranda obstructed complaints would be futile.[6]

### D. The PSC does not Meet the Requirements of Rule 20

The joining of additional defendants is governed by Rule 20 of the Federal Rules of Civil Procedure, which provides that Defendants may be joined in one action if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).

Here, the requirements of Rule 20 are not met. The allegations in the SAC involve a campaign

---

[6] Plaintiff's SAC already contains the allegation that these appeals were "screened out and obstructed" by Defendant Pederson. (SAC ¶ 46(c).)

of harassment, discrimination and violation of the equal protection rights of Plaintiff based on her transgender status. The allegations in the PSC involve a campaign of harassment based on Plaintiff's participation in internal affairs investigations and Luna's filing of a complaint. Accordingly, the allegations in the PSC do not arise out of the same series of transactions or occurrences and joinder would be improper.

### E. The PSC Would Create Confusion and Prejudice

Rule 20 is designed to promote judicial economy and to reduce inconvenience, delay and expense. *Carter v. Foulk*, 2009 WL 839105 at *3 (N.D. Cal. March 30, 2009.) Even if the threshold requirements are met, the court must then consider whether joinder would be fair or result in prejudice to one side and the motive of the party seeking joinder. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir.2000); *Desert Empire Bank v. Insurance Co. of North America*, 623 F.2d 1371, 1375 (9th Cir.1980). Although pro se litigants are held to less stringent standards, they still must comply with the procedural rules. Moreover,

> Requiring pro se prisoners to adhere to the federal rules regarding joinder of parties and claims prevents 'the sort of morass [a multiple claim, multiple defendant] suit produce[s],' avoids confusion, ensures that prisoners pay the required filing fees, and prevents prisoners from circumventing the PLRA's three strikes rule.

*Sua v. Espinda*, 2010 WL 184314 at * 3 (D. Haw. Jan. 19, 2010.), *quoting George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007.) Plaintiff has already tried to join her cellmate in this case. Even after the Court specifically ruled that Luna could not be joined as a plaintiff, Plaintiff again sought leave to file the PSC, which repeatedly refers to claims of "Plaintiff Luna."

The joinder of these claims, largely revolving around actions taken by and against Luna would lead to confusion and would circumvent the requirement that Luna file his own lawsuit to assert violations of his rights. Moreover, the joinder of these claims and defendants would result in prejudice to Defendants because all Defendants would be tainted by association with each other and the claims of unrelated misdeeds.

Accordingly, even if this court found that the requirements of Rule 20 were met, the Court would still recommend denying the Motion to Supplement in order to avoid confusion and prejudice.

//

## V. CONCLUSION

For the above reasons, the Court recommends that Plaintiff's Motion for Leave to File a Supplemental Complaint be Denied.

This report and recommendation of the undersigned Magistrate Judge is submitted pursuant to 28 U.S.C. § 636(b)(1) to the United States District Judge assigned to this case.

**IT IS ORDERED** that no later than *March 19, 2010* any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than *April 2, 2010*. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 18, 2010

Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court